## PERKINS v. SMITH.

(Supreme Court, Appellate Division, Second Department. May 1, 1903.)

1. BROKER—RIGHT TO COMMISSION—PROMISE WITHOUT CONSIDERATION.

The owner of property, asked by a broker if he would sell it, said he might, if he got a good offer; that he considered $20,000 a good offer. And to the question whether, if made an offer of $19,000, he would sell at the price, and pay the broker $190, he answered that he could not say, but did not believe he would refuse it. The next day, being made that offer through the broker, he said he would take it, and pay the broker $190. *Held*, that his promise was without consideration, everything done by the broker having been done previously and voluntarily, so that the owner, concluding not to sell, was not liable to the broker.

Hirschberg, J., dissenting.

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Walter C. Perkins against James B. Smith. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

George Harrison McAdam, for appellant.
Morris U. Ely, for respondent.

WILLARD BARTLETT, J. The plaintiff brought this action as the assignee of Whitehouse & Porter, a firm of real estate brokers, whose representative in the matters in suit was a clerk named Everett Carson Waller, Jr. The complaint alleged that the defendant agreed to pay Whitehouse & Porter $190 if they would procure for him an offer of $19,000 for the purchase of certain property in the borough of Manhattan; that Whitehouse & Porter duly procured such offer, and communicated the same to the defendant, who accepted it; that the said Whitehouse & Porter duly kept and performed all conditions precedent imposed upon them by their agreement with the defendant and necessary for the earning of the said sum of $190; and that no part of said sum has been paid, although duly demanded.

The principal witness relied upon by the plaintiff to establish his cause of action was the clerk Waller. He testified that, in answer to a letter from Whitehouse & Porter, asking if the property in question was for sale, the defendant wrote the firm as follows:

"November 30, 1901.

"Messrs. Whitehouse & Porter: Have just been putting my house in nice order, painting, papering, &c. Don't see why I should sell. It is a nice house, but (notice my but) if I should get a good offer I might sell. I am not anxious to sell.

"Yours very truly,          James B. Smith."

Waller subsequently called upon the defendant, and asked him what he considered a good offer for his dwelling. The defendant answered, "$20,000." Waller then asked him, if he should make an offer of $19,000, whether he would sell at that price, and pay Whitehouse & Porter $190. The defendant said that he could not answer, but did not believe that he would refuse it. On the following day Waller had another conversation with the defendant, which he narrates as follows:

"I told Mr. Smith that a gentleman had offered me $19,000 for his property. Q. You mean $19,000? A. $19,000 for the property, and I asked him if he would take that price, and pay Whitehouse & Porter $190. He said, after considering it, that he would do it. I said that the papers would be drawn up Monday morning. 'Bring the contracts,' I think were the words. 'Bring the contracts Monday morning.'"

On Monday morning the defendant informed Waller that his wife refused to be a party to the contract, and that they would have to let the matter go. It further appeared from Waller's testimony that the gentleman whose offer he thus communicated to the defendant was Percival J. H. Whitaker. The relations of the witness to Mr. Whitaker appear in the following extract from the minutes:

"Q. In this transaction, were you employed by Mr. Whitaker to buy property in a certain section? A. Well, I do not know if 'employed' is the proper word or not. Mr. Whitaker asked me to go and buy property there for him. Q. In West 31st street and thereabouts? A. Yes. Q. And what were the terms which you were instructed to communicate to Mr. Smith, exactly? A. The terms were that he would pay $19,000 for the property, net, and that I was to get, of course, all commissions from Mr. Smith—both for the firm and otherwise, or any commissions that might be paid. That he would pay $1,500 down on the contract, and the contract was to run until the first of May. Q. And were those terms communicated to Mr. Smith? A. They were."

Still further on in his testimony, Waller said:

"I said to Mr. Smith, 'Mr. Smith, now will you—are you willing to—sell your house to my friend at $19,000, you to pay a commission to Whitehouse & Porter of $190, the terms to be $1,500 down, on a contract to run until the first of May?' After considering, he said yes, that he would do it. Q. And then he told you to come up Monday, and bring the contract? A. Yes."

This is substantially all the evidence tending to support the cause of action set out in the complaint. In my opinion, it is insufficient. There is no proof that the defendant ever agreed to pay Whitehouse & Porter anything for the procurement of an offer for his house. The evidence is that Waller made the offer of $19,000, and that the defendant then said he would take that price, and pay Whitehouse & Porter $190. But for this promise there was no consideration whatever. Neither Whitehouse & Porter nor their clerk, Waller, is shown to have done anything in consequence of the promise, for whatever Waller did in regard to procuring the offer was done before the promise was made. It was his own voluntary act, performed without any employment by the defendant. The defendant's promise, under the circumstances, was not binding in law, and he was at liberty to change his mind, as he did after learning of his wife's refusal to join in the conveyance of the property.

The complaint contains a second cause of action, alleging the performance of work, labor, and services as real estate brokers in respect to the defendant's property at the defendant's request, which work, labor, and services are alleged to have been reasonably worth the sum of $190. Not only was there no proof in support of this cause of action, but Waller's testimony negatives the idea that he was employed by the defendant, and shows affirmatively that his real employer was Whitaker, the person who desired to purchase at $19,000.

I think that the judgment entered in the court below was against the evidence, and that for this reason a new trial must be ordered, on the usual terms in such cases.

Judgment of the Municipal Court reversed, and new trial ordered, upon the payment by the defendant of the costs of the trial already had. In default of compliance with this condition, the judgment is affirmed, with costs. All concur, except HIRSCHBERG, J., who dissents.